312-0371, People of the State of Illinois, Appellee by Justin Nicolosi v. Kenneth Fair, Appellant by Debra Pugh Good afternoon, Your Honors, my name is Debra There are two issues in this case, and both of them involve a very simple application of well-established basics of other crimes evidence. The first issue is that the other crimes evidence should not have been admitted at all. The second issue is that even if the other crimes evidence should have been admitted, the court erred by misinforming the jury of the nature of the other crimes evidence. So in this case, the police had a search warrant to search Kima Fair and a house on Louisa Street. The police pulled over Kima Fair as he was leaving the house in his car. His passenger was a man named Marcus McCline. And they stopped him, they arrested him, they searched him. There was no contraband found on Mr. Fair. They then went to the house on Louisa Street, and they conducted a thorough search of the house. In the house, they found a jacket which Mr. Fair admitted belonged to him, and in that jacket was a very small amount of heroin, far less than a gram. And the state's own expert admitted that that is not a standard amount for distribution. And Fair testified that he was an addict and that although he had sold heroin before, that he was an addict and that this amount was for his own personal use. As for the cocaine, there was also cocaine found in the house. Now this was a house in which a lot of people were there. There were three people there during the search. Fair and McCline had just left the house. There were people sort of coming in and out of the house. And in this house, in a common area of the house, in the kitchen, there was a cabinet in the kitchen, and inside that cabinet was a dog food bag, was a nylon bag. Inside that nylon bag was a Crown Royal bag, and inside that Crown Royal bag was more than 100 grams of cocaine. Now Fair denied knowing anything about that. He said he knew that there was a dog food bag there, but he didn't know anything about the cocaine. So for the heroin, the issue was intent. Did he intend to sell this small amount of heroin? For the cocaine, the issue was more knowledge. Did he know about this heroin? Did he constructively possess this cocaine? Did he constructively possess it? So it's two different issues regarding the two different drugs. Now in order to prove the case, the state sought to introduce other crimes evidence. And that other crimes evidence consisted of four prior convictions. There were two convictions for possession with intent to sell cocaine. One from 11 years before this arrest, one from 10 years before this arrest. There were also two more recent convictions, both just for simple possession of drugs. One for simple possession of heroin from five years before, and one for simple possession of cocaine from two years before. Now this is all the court knew about this other crimes evidence before admitting it. The court knew only the names of the offenses, when they occurred, and the fact that they all occurred in Peoria County. And the court, instead of the evidence being presented as evidence in the state's case, the court actually read the prior convictions to the jury, instructing them that they could use this evidence for knowledge, intent, absence of mistake. However, when reading this to the jury, the jury said properly the first two convictions were for possession with intent to deliver. However, the second two convictions, which were actually just for simple possession, the court also said that those were for possession with intent to deliver. So the court, and he was not corrected in saying that. So the jury went back to the jury room, believing that they had these four convictions that they could use for knowledge, intent, absence of mistake. But in fact, two of them were only for simple possession. So as for the first issue, this other crimes evidence should not have been admitted at all. It's well established in Illinois that other crimes evidence is admissible only for specific purposes, and it's admissible only if it's sufficiently similar to the other, to the crimes at issue. If it crosses a certain similarity threshold to the crimes at issue in the case, and if it's probative for the actual issues for which it's being admitted, and if it's not being used to prove propensity. In this case, the court didn't know anything about these other crimes evidence, except for the names of the incidences of the crimes and when they occurred. It didn't cross the similarity threshold. Also, the crimes were not probative for any of the reasons they were supposedly admitted. And finally, the state hammered on this as propensity evidence in their closing argument. So for all these reasons, it shouldn't have been admitted. As for similarity, the courts must do more than just look at the names of the offenses in order to admit it as other crimes evidence. Illinois courts have consistently always looked at the underlying facts, not said, oh, what is the name of this crime? Okay, that's admissible. They always look at the underlying facts. Now the state maintains that in drug cases, the name of the crime is sufficient, and that all the court needs to do is look at the name of the crime. That's not the case. That's not the law in Illinois, and it's never been the law in Illinois. As far back as 1963, the Illinois Supreme Court has been looking to the underlying facts of the offenses. Are they similar? What do they actually show you about the current offense? It's not enough just to know the name of the offense. Now the state also says that it's not possible for there to be sufficient differences between drug cases, that a drug case is a drug case. All other offenses are admissible. All other drug offenses are admissible in a drug case. That's just also not the law in Illinois. There are no cases saying that drug crimes are treated differently. There are no cases saying that in a drug offense, there are no possible significant differences. And so here, there's not only no threshold similarity, other crimes evidence are not probative for any of the reasons they were admitted. First, the other crimes evidence was admitted for intent. So for the cocaine, the chemotherapist's argument there was that he knew nothing about it, that he didn't constructively possess the cocaine. The Illinois Supreme Court has made clear that other crimes evidence is admissible for intent only if the defendant tends to place an innocent construction on his act. If he said, yes, I did that, but I was doing it for an innocent reason. Ilgin is a sort of classic Illinois Supreme Court case based on that, where the defendant was cleaning his gun, shot his wife, claimed it was an accident, and the state was allowed to admit other evidence of prior assaults on the wife saying, no, he said he did this innocently, but he didn't. Here, he did not try to put an innocent construction on the cocaine possession. He just said, I didn't know anything about it. As for the heroin, he did try to put an innocent construction on it. He said, yes, that's my heroin, but I wasn't intending to sell it. However, other crimes evidence can be admitted to show intent only if it's closely related in time, place, and circumstance. Now, Chemofare has never been convicted before of selling heroin. He's been convicted 10, 11 years before this for selling cocaine, never for selling heroin. Simple possession of heroin, yes. And so there are no crimes of his. On top of that, as far as the other sales go, we don't know anything about those other offenses. We don't know, were these street sales? Was he just selling cocaine on the street 11, 10 years ago? Was he driving in his car with the cocaine? Let me ask you, for impeachment purposes, if we're admitting a prior conviction to impeach somebody to say, they're a bad guy, so probably they're a liar, the time element is usually about 10 years. For similar crimes, is there a set? And the 10 years seems to be a right-line test. A trial judge can refuse to admit it if it's newer than that for a number of reasons. But after 10 years, it seems to be pretty you can't use it. With respect to similar crimes, has any court ever put that similar? No, there's no similar right-line rule. From Montgomery, the courts are clear that it has to be 10 years. And it's 10 years from the time the defendant is out of prison, not even 10 years from the arrest. And so there, there is a right-line rule for the sufficiently similar crossing that threshold. There's no right-line. I think it depends. It's sort of a more complex analysis of, well, how similar is this? Is this really similar? If there's a certain degree of similarity, then maybe a little bit longer ago would be sufficient. But generally, the longer ago it is, the less probative it is of what's happening now for the defendant. And so with Montgomery, it's a different standard anyway, because in Montgomery, sort of the less similar it is to the crime at issue, the less prejudicial it is. So courts are more likely to want to introduce things that are less similar to the crime at issue, whereas with other crimes evidence, you want something that's as similar as possible to cross that similarity threshold. And in Montgomery, it is possible to just say, oh, these are the crimes. Do they show any lack of truthfulness? But it's a very different analysis and completely different jury instructions and a completely different analysis about whether the defendant will then testify. But no, there is no similar right-line rule for this. And then going back to intent with the heroin, they had to prove that it was sufficiently similar in time, place, and circumstance, but he has no prior heroin dealings. And we also just don't know anything about the circumstances of the prior cocaine dealings. Was it a small amount in a pocket in a bedroom that he said was for his personal use? If so, maybe that could be starting to cross the similarity threshold, even though it's a different drug. But the fact is, we just don't know. The state just didn't meet a burden of showing any kind of similarity. We don't know any of the facts of the other cases. As for knowledge, it was also admissible to show knowledge. Knowledge was at issue with the cocaine, of course. That was the key issue. Did he know that that cocaine was there? But knowing only the bare facts of these convictions, that knowledge could only really be proved through propensity, because the idea being, well, this guy's a drug dealer. Of course he would know about drugs in the kitchen. Now, if he had said, oh, yes, I knew that that white powder was there, but I thought it was flour, then you could say, this is somebody who's had dealings with cocaine. This guy knows what cocaine looks like. Although, of course, we don't know even whether the prior convictions were for powder cocaine or crack cocaine. But here, the knowledge, or if the state had been able to prove that previously he'd hidden drugs in the kitchen, or in a dog food bag, or something, just to show some similarity. But here, the idea that he would know about drugs in the kitchen just because he's a drug dealer, that's propensity evidence. He's a drug dealer. Of course he knows that he's just a kind of bad guy who would know about hidden drugs. Now, as for the heroin, there was no need to prove knowledge where he admitted that he had the heroin. And the state admitted that the knowledge issue is not the same with the heroin, because he admitted that he had it. And then, as for absence of mistake, now, there was no valid reason to introduce other crimes evidence for absence of mistake when he doesn't claim that his actions were accidental. He doesn't say, oh, I did have that cocaine in my pocket, but it fell in there, or there's something accidental. Here, it's that, yes, I had the heroin, but I didn't intend to sell it, and I didn't know anything about the cocaine. There was no accident that was just not even at issue in this case. So given that it wasn't probative for any of the reasons that it was admitted... Well, let me ask you this. In light of that argument, it would seem, then, that the state would need to wait until after the defendant's case to offer other crimes evidence, then, because you're suggesting you've got to know what the defense is going to be before you can admit that evidence. Well, in a case like this where, I mean, as far as absence of mistake, I suppose, to some extent, that's true, that there has to be some notion of what the defendant's going to argue. But that is the law in Illinois. I mean, for instance, in the state of Illinois, in Peeble v. Wilson from 2005, where the Illinois Supreme Court is saying, well, but you have to see if the defendant is putting an innocent construction on his ax. And it's possible to bring these things in as rebuttal evidence if the defendant is making an issue of them. But in this case, it's sort of not even... It's premature even to be looking at how probative they are where there's not even a crossing of the threshold of similarity. And so we're sort of not even at that point because it shouldn't have been admitted because of the lack of similarity or because there was no showing of any similarity. But that is, of course, an issue that you have to know what the defendant is going to be arguing. But there are no cases saying, oh, you get to throw everything in just in case the defendants argue that. That's just not the law. And so these other crimes evidence, because there's no information about how the jury could actually be using it, how could it show intent, how could it show knowledge, it could really only be used for propensity. And propensity is precisely what the state argued. Here's a quote from the state's closing argument. Quote, common sense says that he'd be able to get cocaine because he has the heroin in his pocket, that he'd sell cocaine again. So to sort of shorten it, that he'd sell cocaine again. It's rare to find such a clear distillation of the use of propensity evidence. He's done it before, he'll do it again. Because that's really the only way it could be used. The idea that, and of course the fact that the judge mistakenly told the jury that all four convictions were for drug sales. It's given the jury the impression that this is a guy who's been an unrepentant drug dealer for the last decade. Counsel has two minutes. So the evidence here is, to sort of combine the analysis for both issues one and issue two as far as the prejudice goes. For issue two, the state admits that the judge told the jury incorrectly about the other crime's evidence and that it really was civil possession. But the state argues that it wasn't plain error and that the counsel wasn't ineffective. So for all of these, in the first issue it was not harmless because the evidence here was not overwhelming. With the cocaine, there was some impeached testimony from an officer where one officer says there was no admission whatsoever regarding the cocaine. And one officer said, oh, he said that anything illegal was his. The defense said, did he say the cocaine was his? And the officer said, he said anything illegal. He didn't even... And the other officer who was there for all the interrogations says that there was no admission whatsoever regarding the cocaine. And so there was this occasional occupancy of this house that people sort of came and went into, the impeached testimony, and then the propensity evidence. For the heroin, there was this tiny amount of heroin which the state's own experts said was not consistent with distribution and that chemotherapy as an addict, is he really going to sell this particular heroin or is he going to keep it to save off withdrawal? The evidence wasn't overwhelming. Now the Illinois Supreme Court has said that the improper admission of other crimes' evidence carries with it a high risk of prejudice and ordinarily calls for withdrawal. For reversal. And that's if the other crime's evidence is true. Here, half of the other crime's evidence was not actually true and indicated to the jury falsely that he had been a lifelong drug dealer. So for all these reasons, the second issue is both the first prong of plain error of closely balanced, second prong undermines the integrity of the judicial process. And counsel, as the state admits, was ineffective for not noting the error. And the prejudice, for all the reasons noted in the harmlessness error issue, that the evidence against him was just simply not overwhelming. We have a house that people were coming and going in, impeached officers' testimony, and for the heroin, there was no intent to sell there. So for all these reasons, Mr. Farris, this court reverses conviction and remand for a new trial. Thank you. Thank you, Mr. Pugh. Mr. McCloskey. Good afternoon, Your Honors. May it please the court, counsel. Your Honors, on the first issue, the issue seems to be the analysis of the similarity prong of the other crime's evidence. The people submit that, again, as I stated quite repeatedly in my brief, that the titles of the convictions in this case, and in relationship to the titles of the convictions in the prior cases, are sufficiently similar, given the language in other cases. And what I mean by that is that the cases at defendant's sites involve, where other crime's evidence is omitted, involve that the titles of the crimes are vastly different from one another. What I mean is the titles of the prior convictions are different drastically from the titles of the current charges. And, for example, because of the differences in the charges, in the titles of the charges, because there could be so many distinguishing factors, that there needed to be more of an analysis of the underlying facts of the prior convictions. And yet it is true that there is no case that says that charges involving the unlawful possession or the possession with intent to deliver are inherently different and need to be analyzed differently, like I suggested in my brief. But the people submit that there shouldn't be, that we don't need a case to tell us that these are different, because I think, being attorneys using our common sense, we can see that the unlawful possession cases and possession with intent cases are inherently different than the cases at defendant's sites. For example, People v. Ilgan, the prior convictions were physical abuse and verbal threats, whereas the current charge was murder. Now, people would submit that those are vastly different on their face, and they needed, those offenses need a thorough discussion of the facts to figure out the differences. In Bartall, there are two shooting offenses. Well, we can think of a million things that differentiate shooting offenses from each other. But in our case, we have unlawful possession and unlawful possession with intent. And the people would submit, like I argued in my brief, that the differences in individual offenses of these individual instances of these offenses would not dwarf the similarities, that there are such obvious similarities. Possession, it's going to be in someone's clothes. It's going to be in someone's car. It's going to be in someone's house. The people submit that it doesn't really matter how you possess the drugs, that you possess them, and the people submit that. Does the defendant possess them? I'm sorry, Your Honor, what was that? I can understand your argument to the extent you're arguing that it may not matter, the differences may not matter when you're dealing with different people, but if you're dealing with the same defendant, don't you need to show that this is the way that he stashes his stuff that he's going to sell? Well, the people would submit that, again, because the prior offenses and the current offenses are so similar on their face, and, in fact, some of these are. How are they similar? I mean, what's similar about them? Well, that there's priors for unlawful possession of cocaine with intent to deliver, and the current charges are exactly the same. What's similar about the underlying facts? Oh, Your Honor, we don't know the underlying facts. I'm merely suggesting that the cases that the defendant cites, in support of her argument that we should dig into these cases as well, the differences are significant and that the fact that the charges are different in the cases the defendant cites leads to a conclusion that this case should be handled differently. What about when the judge has told the jury that the, I guess this is probably Issue 2, that he advised the jury that the defendant, in essence, that the last two convictions were for possession with intent to deliver, when, in fact, they were just for simple possession? Yes, Your Honor. And in my brief, I concede the error that the trial judge definitely misrecited the 2006 and the 2009 convictions. But the people would submit that, Your Honor, this needs to be analyzed for plain error because it was forfeited. The defense counsel did not object to the misreading of these convictions. And the people would submit that under the plain error rule, under either prong, it is not met in this case. First and foremost, this case is not closely balanced. I'm going to tie that in with my argument under Issue 1 that this was harmless error. Regardless of whether the issue of similarity was properly handled, the people would submit that the evidence for each one of these convictions is overwhelming and, therefore, any error with regard to the other crimes evidence is harmless. What's the evidence that's overwhelming of intent to deliver the heroin? Well, Your Honor, there was testimony from officers that the fact that the heroin was in five individual bindles and that that was indicative of an intent to deliver. And, of course, Your Honor, one of the most strong pieces of evidence in this case is that the defendant admitted on the witness stand that he not only possessed that heroin, but he also sells heroin. He actually admitted that he sold heroin the day before his house was searched. Your Honor, I don't think it gets a whole lot stronger than an admission that he sells heroin for the trier of fact to conclude that the heroin he possessed in this case was going to be sold, especially when there's testimony from officers that this is how people sell heroin. When people distribute heroin, this is how they package it. But anyway, Your Honor, this is harmless because the evidence is overwhelming. Again, with regard to the possession of heroin charge. What about the structural aspect? Are we talking about the plain error on Issue 2? Well, Your Honor, the people would argue that this is not a structural error. This isn't of the type that the Supreme Court has deemed structural. And that does not erode the fundamental fairness of the trial because, again, there were four priors that were set to be admitted. And two of them were properly admitted, the two intent to deliver. And the people would submit that the prosecutor didn't harp on these convictions, again, because the evidence of possession of both the heroin and the cocaine and the intent to deliver the heroin and the cocaine were both so strong that the prosecutor didn't need to lean heavily on these prior convictions. And again, Your Honor, back to the strength of this evidence. The possession of the cocaine, the people would submit that the evidence of constructive possession was very strong. Again, I don't think there was any debate here that the defendant controlled the premises that this cocaine was found. Again, he told Officer Lenthecum that everything in this house was mine. And further, he had health care mail sent to this address. He had the power bill sent in his name to this address. He had a key for this house on him. He had changes of clothes. He had his own motorcycle and a friend's motorcycle at this house. People submit there should be no debate that he lived in this house and that he certainly controlled it. And if he controlled it, then it gives rise to the inference that he had knowledge of what was inside, and, of course, the cocaine was inside. The people submit that the evidence is very strong that he possessed both the heroin. Well, obviously, it was overwhelming that he possessed the heroin. The people would actually submit if the court felt the need to reverse any of the convictions, it should not in any way reverse the possession of heroin conviction because the defendant admitted on the witness stand that he possessed the heroin. With regard to the intent to deliver each drug, again, as I said earlier, there was testimony that the way this heroin was packaged was indicative of an intent to deliver. And also, again, the defendant admitted that he sold heroin often and did it the day before. Maybe not often, but he said he sold heroin. Now, that should be more than enough to support that conviction. With regard to the intent to deliver cocaine, the people would submit that there was testimony from officers that the amount of the cocaine at 107 grams was indicative of an intent to deliver and not merely to use the drug. So, again, the people submit that regardless of how the issue of similarity was handled, any error in the trial judge's handling of that issue was harmless in light of the evidence against the defendant, which the people again submit and the trial judge found was very strong against the defendant regardless of any admittance of any prior convictions. And with that, the people submit that this court affirmed the defendant's convictions and sentences. If there are any other questions, I'd be happy to answer them. I don't think so. Thank you, Mr. McCloskey. Ms. Pugh, any rebuttal? What the state is asking here is nothing more than, there's nothing less than a radical revision to Illinois law. They're saying they want this court to start carving out an exception for drug crimes. It's not true. The Illinois Supreme Court in Cole, 1963, consistent cases have used the same analysis for drug crimes. Let me ask you this. Like you said, some of these other crimes, but if a person is convicted of possession of cocaine with intent to deliver, one can assume that the background facts included that he possessed cocaine and either packaged in a way or in such an amount that the court was convinced that he intended to deliver it. What other similarity would one need? I mean, there has to be some kind of underlying facts. For instance, look at these two cases that we have before us. They're quite different. I mean, a small amount in a pocket versus a lot in the cabinet. Now, it's kind of interesting. The one case that the state did rely on to say, like, oh, you really don't need to show any similarities is actually a federal case, U.S. v. Hernandez. And in my brief, I argued, don't rely on federal cases. But it's kind of interesting because even in that case, the case that the state relied on, this is a quote, the prior bad act may not just be any drug crime. It must be relevant to showing intent or other matters that are relevant for other crimes evidence. It can't just be any drug crime. The Illinois Supreme Court has looked to, has he sold to the same undercover officer? In other cases, were the drugs packaged the same way? Just different things that actually show a similarity rather than, is this a drug dealer? Oh, he's still a drug dealer. The way that the state is arguing it is asking this court to adopt a brand new law, a brand new body of law to allow propensity evidence regarding drug cases. Now, quickly to go to a couple other things. The idea that the defendant controlled the premises here. It's worth noting that during the search, there was a woman there, Erica Miller. Two juveniles had apparently been sleeping on the couch the night before. Kima Fair left the house with a guy named Marcus McCline, whose driver's license is visible in the videotape that the state admitted as evidence. The defendant presented unrebutted testimony that another guy named Richard Braxton was there. This is a house that people were coming and going from. He testified and another person testified that this was not his primary residence, that he and his girlfriend used this as neutral ground, and apparently a lot of other people were using it too. So this is not a case. This is not a family home where he is clearly controlling this kitchen. And as for the heroin, yes, it was packaged the way it would be sold because that's also the way it would be bought. It's in bindles because that's also how you buy it. To what effect is statement to the police that, in fact, I sold some heroin yesterday? Well, the thing is the state has to prove not that he's a heroin dealer. The state has to prove that he possessed this specific heroin with the intent to sell this specific heroin. And given that this is a drug addict and that the state admitted that this is not an amount for sale. But armed with that evidence, do you think any reasonable trier of fact is going to find that he was possessing with intent to deliver? Well, the question is not reasonable doubt here. The question is closely balanced. And the question is whether this propensity evidence was harmless where this is a heroin addict. And is he really going to sell his last little bit of heroin or is he going to try to stave off withdrawal for a day or so? And so could the jury have believed that he was going to try to stave off withdrawal? So the evidence wasn't overwhelming. It was not overwhelming with regard to the idea that he was going to sell that little bit of heroin. And finally, the question about structural error, that prong to of plain error. For one, the Illinois Supreme Court has never specifically held that it's only structural errors. There have been cases since the Illinois cases in Glassburn, Thompson, saying appellate court cases that have found plain error under the second prong without it being structural error. And for another, the issue of the court misstating the other crimes evidence is an extremely unusual error. I searched far and wide. I found nothing like it in the case law. Whereas a structural error list is a list of these very common errors that would cause a new trial. But the idea of this kind of error is so odd it would never even make it onto the structural error list. So you'd essentially be saying if you say that only structural errors are plain error under the second prong, it leaves out just odd one-off errors like this that could be. I mean, it leaves off errors that could even be worse than this that just simply didn't happen to make it on the list. But the bigger point is that the Illinois Supreme Court has never it's sort of made gestures toward it, and this has gone over in the states in my briefs about the Illinois Supreme Court's analysis of structural error. But it's not actually the law in Illinois at this point that only structural errors Unless it becomes structural error in mind. What about this structural error? Well, there is no, I mean, there's a specific list of structural errors. And I don't mean the formal list. Oh, okay. But the list is not exclusive. Well, this is, this is... Exclusive, I guess, but... This case... The list is, here are the five or seven things. Right. But there could be other things. So how does it fit into that other things? Well, this is a case in which the jury is going back with wrong information, very serious wrong information about the defendant. Whereas the actual facts show that the defendant had dealt drugs, got out of prison, apparently had a drug problem, was possessing drugs. Whereas the jury is going back to the jury room, thinking that they can use to show his knowledge, intent, absence of mistake, this idea that he's been a lifelong drug dealer. They're going back with wrong information. That undermines the judicial integrity as much as anything. This is not a fair trial. They're given false information. You know, an honest mistake. But still they were going back with wrong information about the defendant and being told to use that wrong information to see whether he's guilty here. That's less than one minute? That's about as serious of an error as you can have, the jury believing that they can use wrong information about the defendant's criminal background for the exact same issues, for the exact same crimes that were at issue here. It was a very serious error, and truly had defense counsel pointed it out to the court, clearly it would have been corrected, and that's why it was such terrible and ineffective assistance of counsel, because he was so badly prejudiced by it, given the fact that the other evidence against him was not overwhelming. So for these reasons, we ask that this court reverse Kim O'Hara's conviction and remand for a new trial. Thank you. Thank you. And thank you, Mr. Nicolosi. We will take this matter under advisement. We'll get back to you in written discussion. We're now taking a short recess. Court is now in recess.